### UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMANDA J. KNIGHT, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LHC GROUP, INC.<br><br>Defendant. | **Civil Action No.:6:25-cv-263**<br><br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Amanda J. Knight, individually and on behalf of the Class defined below of similarly situated persons, alleges the following against LHC Group, Inc. ("LHC" or "Defendant") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### <u>NATURE OF THE ACTION</u>

1. It is both unfair and unlawful for entities like LHC to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges LHC's unlawful practice of charging a "tobacco surcharge" without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. Under ERISA, wellness programs must offer, and provide notice of, a reasonable alternative standard that allows all participants to obtain the "***full reward***"—including refunds for surcharges paid while completing the program. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D). Instead, under the LHC Group Benefits Plan (the

"Plan"), LHC operates a non-compliant, discriminatory tobacco wellness program that does not offer the "full reward" to participants who satisfy the alternative standard and does not provide proper notice in all plan materials, violating federal regulations and depriving participants of benefits required under ERISA.

2.      Tobacco surcharges have become more prevalent in recent years but to be lawful plans can impose these surcharges only in connection with *compliant* "wellness programs," meaning they must adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have issued clear regulatory criteria that plans must satisfy to qualify for the statutory exception or safe-harbor, which they may invoke only if they can affirmatively demonstrate full compliance with these strict requirements in response to claims that their program is discriminatory. Moreover, courts must defer to the agency's interpretation of its own regulations, as long as that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework, ensuring that plans cannot evade ERISA's anti-discrimination protections by selectively or improperly applying these rules.

3.      The strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor." The regulations make clear that for plans to be reasonable they must offer a "reasonable alternative standard" that provides the "full reward" to all participants who do not satisfy the initial standard. In other words, a wellness program must actually be designed to improve health or prevent disease and not be just an excuse

2

to charge certain participants more money or make it difficult for them to get coverage. Providing participants with the "full reward" means making sure that every participant who completes the alternative standard gets the same reward as provided to non-smokers (i.e., avoiding the surcharge for the entire year).

4.      The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[1] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements

5.      Outcome-based programs,[2] such as smoking cessation programs, must offer a "*reasonable* alternative standard," which is an alternative way for "all similarly situated

---

[1] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

[2] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[3] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges. The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . . ." *Id.*, 33160 (emphasis added). Defendant's failure to provide full reimbursement is a *direct violation* of these rules. Employers must also clearly communicate the availability of this alternative standard in all plan materials referencing tobacco-related premium differentials, including plan documents and summary plan descriptions ("SPDs"). *Id.*

6.      LHC cannot qualify for the statutory safe harbor because the Plan fails to satisfy the essential regulatory criteria, which "must be satisfied," (id., 33160) for a wellness program to be lawful under ERISA. The core deficiency of LHC's wellness program is that it does not provide the "full reward" to all participants who satisfy the alternative standard, as explicitly required by 42 U.S.C. § 300gg-4(j)(3)(D) and 29 C.F.R. § 2590.702(f)(4)(iv). The Plan fails to offer a

---

[3] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**") ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual*** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

reasonable alternative standard as mandated by ERISA because it does not provide participants who satisfy the alternative standard after December 15, with a full refund.

7.      By offering the alternative standard and failing to provide a mechanism for retroactive reimbursement to those who satisfy that standard later in the Plan year, LHC denies participants the opportunity to achieve the "full reward," as required by law. This is not a minor technical failure—it is a fundamental violation of one of the regulation's core purposes: ensuring that every participant who satisfies the alternative standard receives the same financial benefit as those who meet the initial standard. Imposing arbitrary and unreasonable cutoff dates by which participants must complete the program discriminates against certain participants who, by no fault of their own, were unable to complete the cessation program or designate a non-tobacco status within the limited timeframe is discriminatory.

8.      Further, LHC failed to provide notice. LHC failed to include the required contact information in certain materials discussing the surcharge and failed to include the required statement that recommendations of participants' personal physician would be accommodated in *any* of the materials, depriving participants of critical information when evaluating their options. These standalone violations of the regulations disqualify Defendant from asserting the affirmative defense in response to the allegations herein that its tobacco surcharge is discriminatory and violates ERISA. LHC also failed to include any reference to the wellness program in the Plan's SPD or in the Plan document, despite the Departments' clear instructions that, for ERISA plans, wellness programs are required to be disclosed in these documents if compliance affects premiums. Upon information and belief, LHC failed to include the required notice in all Plan materials as required.  Again, because Defendant's wellness program does not satisfy the necessary regulatory criteria for a "program[] of health promotion," Defendant's wellness program fails to qualify under

the statutory safe harbor, meaning the tobacco surcharge they impose on participants is unlawful and discriminatory in violation of ERISA

9.     This Complaint alleges that LHC operates a discriminatory wellness program through a tobacco surcharge that is unlawful. LHC has the burden of showing that its wellness program meets every regulatory requirement under ERISA and the implementing regulations, including that they provide a mechanism for ensuring that every participant who satisfied the alternative standard is fully reimbursed and that they provide notice of the availability of that surcharge in all plan materials discussing the surcharge. LHC cannot do so. Its failure to reimburse surcharges to those who complete the alternative standard during the Plan year and failure to provide sufficient notice makes their program facially unlawful under ERISA, and no amount of *post hoc* justifications can cure this fundamental defect. LHC's wellness program is not a compliant "program[] of health promotion or disease prevention[,]" but an impermissible cost-shifting scheme that imposes unlawful penalties on individuals based on a health factor, in violation of ERISA

10.     Plaintiff Amanda Knight is an employee of LHC who paid, and continues to pay, the unlawful tobacco surcharges to maintain health insurance coverage under the Plan. This surcharge imposed, and continues to impose, an additional financial burden on her and those similarly situated.

11.     Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for plan-wide equitable relief to prevent LHC from continuing to profit from its violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendant are fiduciaries of the Plan who have a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf

of herself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

12.     Plaintiff Amanda Knight is, and at all times mentioned herein was, an individual citizen of the State of Kentucky residing in the County of Trigg. Ms. Knight is an employee of Caretenders, which is a part of LHC, who paid, and continues to pay a tobacco surcharge of $25 per  paycheck ($650 annually) associated with the health insurance offered through LHC during her employment. Upon information and belief, Ms. Knight is required to pay this tobacco surcharge to maintain health insurance under the Plan.

13.     Ms. Knight is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

14.     Defendant is a Delaware corporation, and a leading national provider of home health, hospice, and post-acute healthcare services headquartered in Lafayette, Louisiana. The company operates across multiple states, offering comprehensive healthcare solutions through various subsidiaries and service lines. LHC is the sponsor of the Plan and the Plan Administrator under 29 U.S.C. § 1002(16). The Plan, which publicly filed documents show had over 15,000 participants as of September 30, 2023, is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and § 28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the

number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

16.     This Court has personal jurisdiction over Defendant because it is headquartered in this District, Plaintiff's claims and many others similarly situated arise from the acts and omissions of Defendant with respect to its activities and conduct concerning Plaintiff within the State of Louisiana, and Defendant has purposefully availed itself of the privilege of conducting business in Louisiana.

17.     Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because Defendant is headquartered in this District, and this is a District in which Defendant may be found.

## FACTUAL BACKGROUND

### I.     DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

#### A.  Statutory and Regulatory Requirements

18.     To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1).

19.     The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to *programs of health promotion and disease prevention*" (29 U.S.C. § 1182(b)(2)(B)(emphasis added)); however, these "wellness programs"—to qualify for

8

this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

20.     Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

21.     Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the Affordable Care and Public Health Service Acts in 2010, the Departments, published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

22.     The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the

prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden shifts to the employer to prove that the surcharge is non-discriminatory because the wellness plan qualifies as a "program[] of health promotion and disease prevention" that satisfies *all* the necessary regulatory criteria.

23.     The regulations are not optional because they serve as the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions by ensuring that wellness programs do not arbitrarily penalize participants and preventing employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a program fails to meet even one of these stringent requirements the program cannot benefit from the statutory carve-out and remains in violation of the statute's anti-discrimination provisions. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if all of the [] requirements are satisfied***.").[4]

### B. Regulatory Criteria

24.     To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

---

[4] Congress adopted these regulatory criteria when, through the Patient Protection and Affordable Care Act, it amended the Public Health Service Act, incorporating these criteria into ERISA. *See* 42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1) ("[T]he provisions of part A of title XXVII of the Public Health Service Act [42 U.S.C. § 300gg *et seq*.] (as amended by the Patient Protection and Affordable Care Act) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart[.]").

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards:    "The *full reward* under the outcome-based wellness program must be available to *all similarly situated individuals*."  29 C.F.R. § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

25.     The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

26.     Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

27.     A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive*** . . . ." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

28.    Some mistakenly conflate criteria (1) and (4), but they impose two distinct requirements: (1) the frequency of opportunity and (2) the full reward requirement. As discussed, the first ensures participants have at least one chance per plan year to satisfy a reasonable alternative standard. The second mandates that all who meet the alternative standard receive the same full reward as those who satisfied the initial standard at the outset. *See id.*, 33163. Merely offering an opportunity to avoid the surcharge does not satisfy the "full reward" requirement. If a plan offers the alternative standard throughout the plan year, it must have a mechanism ensuring all participants who complete it receive the same benefit, regardless of when they complete the program. A plan that allows participants to complete the alternative standard throughout the plan year but withholds full reimbursement violates the full reward and the notice requirements, rendering the program noncompliant with ERISA's anti-discrimination protections.

29.    The "full reward" requirement makes clear that if a plan offers a reasonable alternative standard throughout the plan year, it must ensure that ***every participant*** who satisfies the alternative standard ***receives the same full reward*** as those who met the initial standard at the outset. A plan cannot permit participants to complete the alternative standard later in the plan year and then deny them the reward that was provided to participants who satisfied the same standard earlier in the year. Plans that impose arbitrary cutoff dates and withhold retroactive reimbursement violate ERISA's anti-discrimination protections by penalizing participants for the timing of their compliance rather than ensuring equal access to the full reward. The DOL has repeatedly made clear that it interprets the phrase "full reward" to mean the same reward (or lack of penalty) as

non-smokers received. In other words, avoiding the surcharge for the entire plan year.[5] Under *Auer v. Robbins,* 519 U.S. 452 (1997) and *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), courts **must** defer to agency interpretations of their own regulations unless "plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461.

30.    The DOL recently articulated how plans must have a mechanism to ensure full reimbursement for surcharges already paid because this "interpretation [of the regulatory requirement] is not only reasonable under the regulation, it is entirely consistent with ERISA." *Macy's*, No. 1:17-cv-541, ECF No. 87, PAGEID: 1224 (filed Jan. 24, 2025), 19 (S.D. Ohio) ("DOL Brief"). Permitting plans to penalize participants for taking longer to complete the alternative standard would, as the DOL recognized, "in fact allow for plans to discriminate for a portion of the plan year." *Id.* LHC's Plan does exactly that.

31.    By denying retroactive reimbursement to anyone who satisfies the alternative standard after Defendant's arbitrary cutoff date, LHC unlawfully creates two classes of participants: those who avoid the surcharge by completing the program earlier in the year, and those who are forced to pay surcharges for part of the year simply because they took longer to complete the same program during the same Plan year. This type of plan violates § 702's

---

[5] *See Sec'y of Labor v. Macy's, Inc.*, No. 17-cv-541, ECF 41, PAGEID: 360 (asserting, in 2018, that "in order for the reward to be available to all similarly situated individuals, the plain language of the regulations required reimbursement of the Tobacco Surcharge ***for the entire Plan year*** to Plan participants who completed a tobacco cessation program" (emphasis added)); *id.*, ECF 87, PAGEID: 1224 (asserting, in 2025, that for a plan to satisfy the "full reward" requirement, and ensure "that reward [] be 'available to all similarly situated individuals,' it would [] need to be provided to anyone who completed the tobacco cessation program ***during that year***" (emphasis added); *id.*, 2021 U.S. Dist. LEXIS 221603, at *50 (S.D. Ohio Nov. 17, 2021) ("That is, all seem to agree that . . . the [Final R]egulation[s] would require a r***efund of the entire annual amount for anyone who completes the reasonable alternative standard at any point during the year***") (emphasis added).

prohibition against discrimination based on a health status factor and "in fact allow for plans to discriminate for a portion of the plan year." *Id.* LHC's failure to provide full reimbursement for tobacco surcharges directly contradicts ERISA's anti-discrimination mandate and the regulatory requirement that "*[t]he full reward under the wellness program shall be made available to all similarly situated individuals.*" *See* 42 U.S.C. § 300gg-4; 29 C.F.R. § 2590.702(f)(4)(iv).

32.    Allowing companies like LHC to exploit their participants and unlawfully extract millions from them under the guise of a wellness program that is, in reality, a cash grab, directly contradicts ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law.

## II.    DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

33.    LHC's wellness program violates ERISA and its implementing regulations by failing to provide a "program[] of health promotion or disease prevention" that complies with the regulatory framework. Specifically, Defendant's program unlawfully discriminates against participants for part of the year by denying full reimbursement to anyone who completes the wellness program after the December 15 cutoff date. Instead of ensuring that "all similarly situated individuals" obtain the "full reward" as required by 29 C.F.R. § 2590.702(f)(4), Defendant's Plan penalizes participants who complete the program after December 15 by withholding reimbursement to those participants. In doing so, Defendant turns a supposed wellness program into an unlawful cost-shifting scheme that exploits employees and violates ERISA's anti-discrimination protections.

34.     LHC's wellness program fails to comply with ERISA and its implementing regulations by denying participants the "full reward" required under 29 C.F.R. § 2590.702(f)(4)(iv) and by failing to provide notice under § 2590.702(f)(4)(v).

35.     Specifically, the program imposes a punitive $12.50 weekly/$25 biweekly tobacco surcharge for an annual amount of roughly $600. While tobacco users have the option of participating in a wellness program, the Commit to Quit program, Defendant requires participants to complete the program by the arbitrarily-selected date of December 15 of each plan year to avoid the surcharge. Participants who take longer to complete the program are denied the ability to avoid the surcharge for the remainder of the Plan year, regardless of whether they subsequently quit using tobacco or complete the program.

36.     Participants who fail to enroll in and complete the program by the December 15 deadline are ineligible to receive the "full reward." It is unclear whether these participants even have the option of having the surcharge removed on a *prospective* basis, despite regulatory requirements that the "full reward" must be provided to "all similarly situated individuals" who satisfy a reasonable alternative standard. This practice penalizes participants who successfully quit tobacco or finish the program later in the Plan year or who require more time to complete the program due to personal circumstances, effectively denying them equal treatment under the plan.

37.     Defendant's wellness program clearly limits retroactive reimbursement through its FAQ and program guidelines. As the program states:

> If you currently use or have used nicotine products in the last 12 months, you MUST call QuitLogix to enroll AND complete the tobacco cessation program by December 15 [] to avoid the tobacco surcharge on your [] health plan premiums.

38.     Participants who fail to meet this deadline, regardless of circumstances, are excluded from receiving the full benefit of the program for the plan year. This means that

participants who quit using tobacco or who complete the cessation program after December 15 are unable to avoid the surcharge retroactively, even if they successfully obtain the same health outcome. By failing to offer the full reward to participants who meet the alternative standard outside of the arbitrarily limited timeframe, Defendant's wellness program violates ERISA's requirement to provide the "full reward" to "all similarly situated individuals."

39.    This structure imposes financial discrimination on participants based solely on the timing of their compliance, creating two classes of individuals: (1) those who avoid the surcharge entirely because they complete the program by the cutoff date, and (2) those who must pay surcharges despite ultimately meeting the same requirement. This violates ERISA's prohibition on health-based discrimination by unfairly penalizing some participants for taking longer to complete the program.

40.    Moreover, the Plan fails to provide participants with clear notice. Specifically, the Plan's failure to fully reimburse participants who complete the alternative standard later in the year means that the so-called "reasonable alternative" is, in reality, not actually available to all similarly situated individuals in the way that ERISA and the Final Regulations require. A notice that describes an alternative standard that does not provide the "full reward" is, by definition, misleading and incomplete. The Plan effectively provides notice of a *partial* alternative standard, which is insufficient under 29 C.F.R. § 2590.702(f)(4)(v) because it does not enable participants to obtain the same financial benefit as those who initially meet the non-smoking standard.

41.    Further, none of Defendant's materials addressing the tobacco surcharge include a statement that a participant's physician's recommendations will be accommodated, as required under ERISA regulations. This omission not only fails to meet the regulatory requirements under ERISA but also undermines the purpose of wellness programs, which is to promote health

outcomes in an inclusive and equitable manner. By failing to include this critical information in its materials, Defendant prevented participants, particularly those who may have unique medical conditions or disabilities, from knowing that they have the option to work with their healthcare provider to identify and recommend a reasonable alternative standard tailored to their individual needs. Additionally, the tobacco surcharge is entirely omitted from the Plan's SPD, and upon information and belief, it is also absent from the Plan document. The absence of any mention of the surcharge in these key documents, despite clear guidance from the Departments that such notice is required,[6] deprives participants of the information necessary to understand their rights under the wellness program, including their ability to qualify for a reasonable alternative standard and avoid the surcharge for the entire plan year. Defendant fails to provide this required notice in all communications to participants regarding the tobacco surcharge.

42.     From 2021 through 2024, and, upon information and belief, for years prior and after, Defendant charged an annual tobacco surcharge of $600. Each year, Defendant administered a wellness program that resulted in tobacco users being regularly charged ($25 biweekly) that was deducted from their paychecks. Plaintiff paid this surcharge during this period and continues to pay it.

43.     LHC's wellness program fundamentally fails to comply with ERISA's regulatory requirements because it does not provide the full reward to any participants who complete the alternative standard after an arbitrary deadline and fails to provide notice of the same or in all the

---

[6] *See* § 2590.702(f)(4)(v) ("The plan or issuer **must disclose in all plan materials** describing the terms of an outcome-based wellness program, and **in any disclosure that an individual did not satisfy an initial outcome-based standard**, the availability of a reasonable alternative standard to qualify for the reward . . . including contact information for obtaining a reasonable alternative standard and **a statement that recommendations of an individual's personal physician will be accommodated**") (emphases added).

Plan materials discussing the tobacco surcharge. Under ERISA, a wellness program cannot claim safe harbor protection unless every criterion of the regulatory framework is satisfied. *See* 29 C.F.R. § 2590.702(f)(4).

### III.    DEFENDANT'S SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

44.    Defendant controls the administration of the tobacco surcharge wellness program, determining which participants are charged and withholding the surcharge amounts directly from participants' paychecks, evaluating and deciding whether participants satisfy the alternative standard, and when those participants will be reimbursed on a go-forward basis, and determining which information is transmitted to participants and when. The amounts Defendant deducts from tobacco-using participants are not placed in a trust account for the Plan but are instead deposited into LHC's general accounts. By retaining these surcharges rather than reimbursing participants who satisfy the alternative standard or contributing the funds to the Plan, LHC unlawfully profits from its own regulatory violations. Instead of complying with its legal obligations to provide a compliant wellness program, Defendant withholds surcharges that should be returned to participants and, in doing so, earn interest on improperly retained funds while simultaneously reducing its own financial contributions to the Plan. This practice constitutes self-dealing and a breach of fiduciary duty under ERISA, which mandates that Plan assets be managed exclusively for the benefit of participants and beneficiaries—not to enhance the company's bottom line.

45.    Defendant has a fiduciary obligation to ensure that Plan funds—including any surcharges collected—are used solely to support participant health coverage and wellness benefits. Instead, Defendant's failure to reimburse surcharges to participants who satisfy the alternative standard reveals the true purpose of the program: revenue generation rather than health promotion.

By charging surcharges without a mechanism for full reimbursement, Defendant transforms its so-called wellness program into a profit-driven penalty scheme that systematically shifts costs onto participants in violation of ERISA's fiduciary duty standards. In sum, Defendant's program is not a legitimate wellness initiative, but an unlawful financial scheme designed to extract additional funds from employees while failing to meet ERISA's legal requirements.

## CLASS DEFINITION AND ALLEGATIONS

46. Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

47. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

48. Excluded from the Class are LHC's officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

49. Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

50. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

51. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have

been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

52. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant's tobacco surcharge discriminates against participants based on a health status-related factor;

b. Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

c. Whether Defendant provided the proper notices in all the plan materials describing the surcharge;

d. Whether Defendant's wellness program violates ERISA and the applicable regulations;

e. Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge;

f. Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its wellness program to ensure compliance with ERISA and applicable regulations;

g. The appropriate mechanisms to determine damages on a class-wide basis.

53. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharges. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

54. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they

were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendant have no defenses unique to Plaintiff.

55.    **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

56.    Plaintiff seeks injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
**UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE**

**(Violation of 29 U.S.C. § 1182)**

57.    Plaintiff re-alleges and incorporates herein by reference the prior allegations in paragraphs 1–54 of this Complaint.

58.    Defendant unlawfully imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory premiums of up to $50 monthly on participants who use tobacco, and by charging some participants more than others based on a health status-related factor, Defendant is violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1). This discrimination stems from Defendant's decision to provide access to the alternative standard and then refusing to provide the full reward to participants who satisfy the alternative standard after the arbitrary December 15 deadline, in violation of ERISA and the Final Regulations.

59.    ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." *See* 29 U.S.C. § 1182(b). Defendant's Plan violates this prohibition by withholding the full reward from participants who complete the alternative standard after the December 15 arbitrary deadline, forcing them to pay surcharges even while actively satisfying the wellness program requirements. If Defendant refused to allow participants to complete the alternative standard after a certain date, they might attempt to justify their refusal to reimburse past surcharges; however, once Defendant permits participants to complete the standard throughout the year, they are legally required to provide those participants with "the same, full reward"—including reimbursement for past surcharges. By failing to do so, Defendant operates a discriminatory wellness program that violates ERISA and fails to qualify for the safe-harbor exception.

60.     Defendant's imposition of the tobacco surcharge violates ERISA § 702 and the Final Regulations, including but not limited to 45 C.F.R. § 146.121(f)(4) and 29 C.F.R. § 2590.702(f)(4). Defendant's wellness program is non-compliant because it does not provide the "full reward" to "all similarly situated individuals" and because it does not provide proper notice to participants. Instead, participants who satisfy the alternative standard after December 15 may, if at all, be entitled to prospective relief only, unlawfully denying them the full financial benefit to which they are owed. To comply with ERISA's "full reward" requirement, the Plan must have a mechanism to ensure that every participant who completes the alternative standard, regardless of when during the plan year, avoids the surcharge for the entire year, as if they were a non-smoker.

61.     Additionally, Defendant fails to provide adequate notice to participants regarding critical aspects of the wellness program, further rendering it noncompliant with ERISA § 702 and its implementing regulations. First, Defendant's materials fail to adequately inform participants that they can receive the "full reward" retroactively for the entire plan year upon completing the alternative standard, regardless of the timing, violating ERISA's requirement that "all similarly situated individuals" be clearly informed of their ability to achieve the full reward. Second, none of Defendant's materials addressing the tobacco surcharge include a statement that a participant's physician's recommendations will be accommodated, as explicitly required under ERISA regulations. *See* 29 C.F.R. § 2590.702(f)(4)(v). Third, Defendant completely omits any mention of the tobacco surcharge from the SPD, and upon information and belief, it is also excluded from the plan document. These cumulative failures undermine the purpose of ERISA's wellness program regulations, which are intended to ensure that wellness programs are accessible, equitable, and non-discriminatory.

62.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's wellness program does not satisfy several of the criteria that plans must comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

63.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate remedies to redress Defendant's violations of ERISA's anti-discrimination provisions outlined in § 1182(b) and § 300gg-4, including but not limited to injunctive relief, restitution, and any other relief necessary to remedy Defendant's unlawful conduct, as set forth in the Prayer for Relief.

## COUNT II
## BREACH OF FIDUCIARY DUTY
### (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)

64.     Plaintiff re-alleges and incorporates herein by reference the prior allegations in paragraphs 1–54 of this Complaint.

65.     ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye

single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

66.     Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to exclusively benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks and using these funds to offset its own obligations to contribute to the Plan.

67.     Each year, Defendant administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management of the Plan and its wellness program, including the decision to administer a wellness program in a manner that violated ERISA and the regulations, as discussed herein. Each year, Defendant exercised discretionary authority with respect to the administration and implementation of the unlawful wellness program by administering a wellness program without providing reasonable alternatives that allowed "all similarly situated individuals" to avoid the surcharge for the entire plan year, dictated the eligibility criteria and penalties for noncompliance, imposed rigid cutoff dates by which participants had to satisfy the alternative standard to obtain the "full reward," and failed to provide participants with the necessary notices.

68.     LHC controlled and disseminated the contents of the SPD and the various flyers, newsletters, and emails sent to participants describing the tobacco surcharge, all of which failed to notify participants of a reasonable alternative standard by which they could avoid the entire year of surcharges regardless of when they satisfied the alternative standard and failed to mention that participants' physicians' recommendations would be accommodated, in violation of the

regulations. Further, LHC failed to adequately and regularly review the terms of its tobacco wellness program and the accompanying communications to participants to ensure they complied with ERISA and the regulations. Year after year, Defendant failed to properly institute safeguards against administering a program that violated the statute and implementing regulations. These actions reflect LHC's active role in administering a non-compliant "program[] of health promotion and disease prevention," resulting in an unlawful and discriminatory tobacco surcharge in violation of ERISA.

69.    LHC also breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. LHC acted disloyally by causing Plaintiff and members of the Class to pay tobacco surcharges that were unlawful because they were associated with a non-compliant wellness program.

70.    As a result of the imposition of the unlawful and discriminatory tobacco surcharges, LHC enriched itself at the expense of the Plan, resulting in it receiving a windfall. Defendant breached its fiduciary duties by prioritizing its own financial interests over the interests of Plan participants by deducting from participants' paychecks the amounts of the surcharges without properly administering reimbursements to individuals who completed the wellness program in the second half of the Plan year. By administering the wellness program in a manner that precluded "all similarly situated individuals" from obtaining the "full reward," and by failing to adequately disclose participants' rights under the tobacco wellness program, LHC administered a program that disproportionately benefited itself at the expense of Plan participants. This practice resulted in an unjust enrichment to LHC at the expense of Plan participants, demonstrating a failure to act solely in the interests of participants and beneficiaries, in violation of ERISA's duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

71.     Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, LHC caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—and improperly used Plan assets for its own financial advantage, in violation of 29 U.S.C. § 1106(a)(1). LHC is a party in interest, as that term is defined under 29 U.S.C. § 1002(14), because it is both a Plan fiduciary and the employer of Plan participants.

72.     By retaining the amounts of the tobacco surcharges, LHC increased its own monies and saved the money it would have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing and using plan assets for their own benefit. By retaining the surcharges without providing participants with the "full reward" to which they are entitled, LHC improperly benefitted from its own wellness program at the expense of Plan participants.

73.     Defendant breached its fiduciary duties by: failing to properly disclose material information about the wellness program to participants, thereby misleading or depriving them of the ability to make informed decision; administering a wellness program that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the wellness program (and the Plan) and Plan communications to ensure they properly complied with the regulatory requirements in violation of 29 U.S.C. § 1104(a)(1)(B). These breaches caused

Plaintiff and the Class to incur unlawful and discriminatory surcharges. Had Defendant conformed with their fiduciary duties under ERISA, they would not have administered a non-compliant wellness program and/or would have reviewed the terms of the Plan and the wellness program regularly to ensure they complied with ERISA and the implementing regulations and would have updated those programs and communications to comply with the law.

74. As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

75. Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharges;

29

D. A declaratory judgment that Defendant breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting an unreasonably restrictive wellness program that violated ERISA's anti-discrimination provisions and implementing regulations and for failing to adequately monitor the terms of the wellness program and Plan communications to ensure they complied with ERISA and the applicable regulations;

E. An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendant to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all amounts Defendant charged for the surcharges;

I. Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J. Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an

Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K. An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L. An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Any other relief the Court determines is just and proper.

Dated: March 3, 2025                         Respectfully submitted,


/s/ *Charlotte Y. Bergeron*
—————————————————

Charlotte Y. Bergeron
LSBA No. 24293
1040 Audubon Street
Lake Charles, Louisiana 70605
Phone: 225-229-7135
Fax: 504-605-1214
E-mail: cbergeronlaw@gmail.com

**SIRI & GLIMSTAD LLP**

Oren Faircloth (*pro hac vice* forthcoming)
Scott Haskins (*pro hac vice* forthcoming)
Kimberly Dodson (*pro hac vice* forthcoming)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: ofaircloth@sirillp.com
E: shaskins@sirillp.com
E: kdodson@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*